IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, § § Plaintiff, § § VS. § ROBERT LOUIS HAWKINS, § § Defendant. § | Criminal No. 3:07-CR-304-D |

MEMORANDUM OPINION
AND ORDER

Defendant Robert Louis Hawkins ("Hawkins") moves to suppress the confession he gave following his arrest, contending that it was obtained without the presence of an attorney, after he had invoked his right to counsel, in violation of *Miranda v. Arizona*, 384 U.S. 436 (1966), *Edwards v. Arizona*, 451 U.S. 477 (1981), and the Fifth Amendment.[1] Following an evidentiary hearing, and for the reasons that follow,[2] the court denies the motion.

---

[1] Hawkins also contended that the confession was obtained as "fruit of the poisonous tree" of an illegal search of his home, and that it should be suppressed on this basis. Because the search was conducted pursuant to a warrant, Hawkins acknowledged at the evidentiary hearing that he had the burden of establishing that his suppression motion should be granted on this ground. At the hearing, however, Hawkins did not submit any evidence in support of this ground, and, in response to questions from the court, he expressly abandoned it as a basis for suppressing his confession. Because this ground of the motion has either been abandoned or can be rejected on the basis that Hawkins did not carry his burden at the hearing, the court need not address it.

[2] Pursuant to Fed. R. Crim. P. 12(d), the court sets forth in this memorandum opinion and order its essential findings.

I

Hawkins is charged in a two-count indictment with possession of cocaine base with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and possessing and brandishing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). On July 17, 2007 officers of the Desoto Police Department arrested Hawkins while executing a search warrant at his home in Desoto, Texas. During the search of his home, the officers discovered cocaine and several items consistent with the distribution of narcotics, such as scales, a safe containing cocaine residue, and an electronic money counting machine. They also found firearms and currency in Hawkins' main bedroom. Following the search and arrest, the officers transported Hawkins to the Desoto police station. He was eventually taken to a "soft interview room"—so called because it has nice leather furniture, couches, and comfortable chairs—where he was interviewed by state and federal officers. All interviews were videotaped.

Desoto Police Department Lieutenant Paul Pothen ("Lt. Pothen") began the first interview by advising Hawkins of his *Miranda* rights. Reading from a card, Lt. Pothen advised Hawkins of his right to an attorney as follows:

> You have the right to have a lawyer present to
> advise you prior to and during any
> questioning. If you are unable to employ a
> lawyer, you have the right to have a lawyer
> appointed to advise you prior to and during
> any questioning, and you have the right to
> terminate this interview at any time.

Lt. Pothen then asked Hawkins "do you understand?" Hawkins answered "Yes sir," and signed the written card indicating that Lt. Pothen had advised him of his rights. Lt. Pothen then introduced Hawkins to Special Agent Hector J. Tarango ("Agent Tarango") of the Bureau of Alcohol, Tobacco, Firearms and Explosives, and the following exchange occurred:

> Hawkins: Could I get my lawyer to come now or [inaudible]?
>
> Agent Tarango: Yeah, you can. I mean, it's up to you. You can give us your side of the story, or once you get your attorney, then . . .[3]
>
> Hawkins: [nodding] Okay, let's go ahead with you.
>
> Agent Tarango: 'Cause what happens is this. I'm going to explain it to you. Once your attorney gets here and starts talking, the flow of the conversation is not going to be the same, he's probably only going to let you answer certain questions. I can't force you to answer any questions . . .
>
> Hawkins: What's the advantage for me though?
>
> Agent Tarango: Well the advantage for you is

---

[3]In this memorandum opinion and order, ellipses used in quotations refer to incomplete or interrupted sentences, not to omitted words that were spoken but not included in the quotation recounted in the opinion.

> that you show that you are cooperating from
> the beginning, as opposed to not cooperating
> and, you know, threatening to go to trial and
> stuff.
>
> Hawkins: Okay.
>
> Agent Tarango: I always tell people this. We
> have evidence against you, that you, you know,
> committed certain crimes. It's best for you
> to give you your opportunity now right after
> this deal to tell me, you know, your side of
> the story. There's no question that I . . .
> that you have to answer. Right?
>
> Hawkins: Okay.
>
> Agent Tarango: I can ask you a question, and
> if you don't want to answer it, just say you
> don't want to answer it and move on. I can
> ask you a series of questions and you answer
> the ones you want and you feel comfortable
> with.

Hawkins continued the exchange by asking Lt. Pothen about the crimes with which he had been charged, and he spoke to the officers for more than one hour. At no time during the interview did Hawkins invoke his right to speak to an attorney or to have a lawyer present during questioning.

Later that day, Hawkins was interviewed two more times by state and local officers. Lt. Pothen began the second interview by confirming with Hawkins that he had read Hawkins his rights and that Hawkins had understood them. Hawkins affirmed these facts, and he continued to speak with the officers for some time. Hawkins was interviewed a third time by IRS Criminal Investigations Special Agent Michael Mosley and Task Force Officer Steve Junker ("Officer

Junker"). These officers initiated their questioning by reading Hawkins his *Miranda* rights. Officer Junker then asked Hawkins: "Do you wish to talk to us on your own?" Hawkins responded: "Yeah, I got nothing to hide." Hawkins then spoke with the officers for three hours, admitting to criminal conduct involving the distribution of cocaine.

Hawkins now moves to suppress the confession, contending that it was obtained without the presence of an attorney, but after he had requested a lawyer, in violation of *Miranda*, *Edwards*, and his Fifth Amendment right to counsel. At the evidentiary hearing, Hawkins principally relied on the statement he made during the first interview——"Could I get my lawyer to come now?"——as proof that he invoked his right to counsel. Additionally, Hawkins contended that, while he was detained in the Desoto police station, and before being taken to the interview room, he several times asked to see an attorney. Hawkins also maintained that he did not persist in asking for his lawyer during the interviews because the police had threatened to arrest his mother.

II

> The government bears the burden of showing that a defendant was informed of his *Miranda* rights and that his waiver of those rights and any resulting confession were voluntary. Whether the defendant waived his rights is a fact question, and such a waiver may be direct or in some cases, clearly inferred from the defendant's words and actions. Mere answering of questions is insufficient to show a waiver; there must be some affirmative act

demonstrating waiver of *Miranda* rights.

*United States v. Chapa-Garza*, 62 F.3d 118, 121 (5th Cir. 1995) (citations omitted).

> The determination of whether a waiver is voluntarily made has two distinct dimensions: First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.

*United States v. Guanespen-Portillo*, 514 F.3d 393, 403 (5th Cir. 2008) (quotation marks omitted) (quoting *Moran v. Burbine*, 475 U.S. 412, 421 (1986)).

"[A suspect] must articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney." *Davis v. United States,* 512 U.S. 452, 459 (1994). "[L]aw enforcement officers are not required to cease questioning when a suspect makes an ambiguous or equivocal request for counsel. An unambiguous statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney is required under this stringent standard." *Soffar v. Cockrell,* 300 F.3d 588, 595 (5th Cir. 2002) (citations and internal quotation marks omitted). "In determining whether defendants have validly waived their *Miranda* rights, the court must take into account the 'totality of the circumstances surrounding the

interrogation.'" *United States v. Laury*, 985 F.2d 1293, 1315 (5th Cir. 1993) (quoting *United States v. McClure*, 786 F.2d 1286, 1289 (5th Cir. 1986)).

III

A

The court must first decide whether the government proved by a preponderance of the evidence that Hawkins was informed of his *Miranda* rights and that his waiver of his rights and the resulting confession was voluntary. Hawkins does not challenge the government's proof that he was informed of his *Miranda* rights. Nor does he contest that he responded to Lt. Pothen by acknowledging that he understood his rights and that he signed the card, thereby confirming his understanding.[4] Instead, he maintains that while he did understand his rights, he invoked the right to counsel almost immediately after his rights were read to him and he signed the card. Hawkins contends that he invoked his rights through his question, "Could I get my lawyer to come now?" On this basis, he posits that all questioning should have ceased until his attorney was present to advise him. He also maintains that Agent Tarango

---

[4]In the videotape, Lt. Pothen instructed Hawkins to sign the card stating, "Can you sign it here that I advised you of your rights?" This statement alone does not indicate that Hawkins waived his rights by signing the card. Agent Tarango testified, however, that Hawkins waived his rights both verbally and in writing. Because the court concludes that Hawkins waived his right to counsel through his statements and conduct, as discussed *infra* at § III(B), the court need not decide whether Hawkins also waived his rights by signing the card.

did not know what he intended to ask with this question, but that he clearly intended to request the presence of an attorney.

The government responds that Hawkins' statement fails to meet the requisite level of clarity to be considered an unambiguous request for counsel, and that according to Supreme Court and Fifth Circuit precedent, the officers were not required to cease questioning under these circumstances.

B

Under *Smith v. Illinois*, 469 U.S. 91 (1984) (per curiam), deciding whether a statement is an unambiguous request for counsel focuses only on the statement in question and, possibly, conduct that precedes it. But subsequent statements and conduct, although relevant to whether the right to counsel, having been invoked, was later waived, are not to be considered. "Where nothing about the request for counsel or the circumstances leading up to the request would render it ambiguous, all questioning must cease. In these circumstances, an accused's subsequent statements are relevant only to the question whether the accused waived the right he had invoked." *Id.* at 97-98. The court therefore does not consider Hawkins' subsequent statement——"Okay, let's go ahead with you."——in determining whether he clearly invoked his right to counsel.

Hawkins' question, "Could I get my lawyer to come now?", analyzed without considering its intonational context, could be interpreted either as an informational request or as invoking the

right to counsel.[5]  Agent Tarango testified credibly that he understood Hawkins to be asking him whether "it was okay for him to call his attorney to come down, to be present."  Agent Tarango answered Hawkins' question by restating that Hawkins had the option either of asking for a lawyer or of speaking on his own, thereby confirming that he understood Hawkins' question to be nothing more than a request for clarification, not a request that an attorney be present before questioning continued.  More important, because the interview was videotaped, the court has been able to listen to the intonation of Hawkins' question and to observe his demeanor in posing the question.  Based on this critical assessment of more than the verbal formulation of Hawkins' question, the court finds that Hawkins did not "articulate his desire to have counsel present sufficiently clearly that a reasonable police officer in the circumstances would understand the statement to be a request for an attorney."  *Davis,* 512 U.S. at 459.  Hawkins' intonation and

---

[5]Although the court is unaware of Fifth Circuit cases that have analyzed whether questions similar to Hawkins' meet the *Davis* standard of unambiguity, at least one out-of-circuit decision has viewed very similar questions as ambiguous. *See, e.g., Obershaw v. Lanman,* 453 F.3d 56, 64-65 (1st Cir. 2006) (holding that the question, "Can I talk to a lawyer first?", was an inquiry into "whether [the suspect] could talk to a lawyer, rather than expressly asserting that he in fact wanted to do so.").  Other cases, however, have viewed similar questions as unambiguous requests for counsel. *See, e.g., United States v. Lee,* 413 F.3d 622, 626 (7th Cir. 2005) (concluding on review of similar cases that the question, "'Can I have a lawyer?'—was similar to [ ] statements recognized by this court as proper invocations of the right to an attorney.").

demeanor are more consistent with an intent to ask a clarifying question than to unambiguously request the presence of an attorney before any questioning took place.

In response to Hawkins' question, Agent Tarango simply and truthfully explained Hawkins' rights and the available options. Agent Tarango first affirmed Hawkins' right to counsel: "Yeah, you can." Next, he confirmed that it was Hawkins' choice: "[I]t's up to you." Then, he stated that Hawkins could also opt to speak without an attorney: "You can give us your side of the story." Then, he reaffirmed Hawkins' right to an attorney: "or once you get your attorney, then . . . ." Agent Tarango's response up to this point essentially reaffirmed Hawkins' rights under *Miranda*. Hawkins then responded, "Okay, let's go ahead with you." This clear statement, and his conduct that followed, indicate that he decided to waive his *Miranda* rights and proceed with the interview.

This finding is also based on the proof adduced at the evidentiary hearing, including Hawkins' testimony from the witness stand. The evidence shows that Hawkins has sufficient intelligence, education (including some college), and experience to knowingly and intelligently waive the right he invoked. *See, e.g., Jordan v. Watkins,* 681 F.2d 1067, 1074 (5th Cir. 1982) (concluding that "[t]he totality of the particular facts and circumstances in this case clearly demonstrate that [the defendant] made a voluntary, knowing and intelligent waiver of his fifth amendment

rights" based on the fact that the defendant "was twenty-nine years old, intelligent, educated, experienced, alert and articulate."). Moreover, it is clear from the videotape that the waiver was not the product of any coercion, intimidation, or deception, and was therefore voluntary. *See Guanespen-Portillo*, 514 F.3d at 403.

The court therefore finds that the government proved by a preponderance of the evidence that (1) Hawkins was informed of his *Miranda* rights; (2) his waiver of the rights and the resulting confession was voluntary; and (3) he did not articulate his desire to have counsel present in sufficiently clear terms that a reasonable police officer in the circumstances would have understood the statement to be a request for an attorney.

IV

Even assuming *arguendo* that Hawkins' statement should have been interpreted by a reasonable officer as a request for an attorney, the court finds that the government also proved that, after Hawkins posed the question, and before the officers initiated any interrogation, Hawkins initiated further discussions with the police and knowingly and intelligently waived the right he had invoked.

A

> An accused in custody, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless he validly waives his earlier request for the

> assistance of counsel. This "rigid" prophylactic rule embodies two distinct inquiries. First, courts must determine whether the accused actually invoked his right to counsel. Second, if the accused invoked his right to counsel, courts may admit his responses to further questioning only on finding that he (a) initiated further discussions with the police, and (b) knowingly and intelligently waived the right he had invoked.

*Smith*, 469 U.S. at 94-95 (internal quotation marks and citations omitted).

B

For the same reasons discussed *supra* at § III(B), the court finds that—even assuming that Hawkins by his question unambiguously invoked his right to counsel—his statement, "Okay, let's go ahead with you," indicates that he "knowingly and intelligently waived the right he had invoked." *Smith,* 469 U.S. at 95. Moreover, the exchange that ensued satisfies the requirement under *Smith* that the defendant must have "initiated further discussions with the police." *Id*. Not only did Hawkins clearly state that he desired to speak with Lt. Pothen and Agent Tarango, the officers did not interrogate him until after he had initiated the discussions by asking Lt. Pothen about the charges against him.

In sum, the court finds that the government proved by a preponderance that, once Hawkins invoked the right to counsel (assuming *arguendo* that he did), he then initiated further discussions with the police, and he knowingly and intelligently

waived the right he had invoked.

V

In addition to contending that the question he posed to Agent Tarango was an unambiguous invocation of his right to counsel, Hawkins also avers that, on numerous other occasions during the day of his arrest, he had been refused requests to speak to an attorney.

A

At the evidentiary hearing, Hawkins testified that he requested to speak to his attorney a total of eight to ten times while being detained. Hawkins also averred that he had not been allowed to use the telephone while in detention before the questioning. Lorenzo Brown, Esquire ("Brown"), Hawkins' attorney in another case, testified that he met with Hawkins later that day at the Desoto police station, and that Hawkins told him that he had not been allowed to speak with an attorney. Hawkins also testified that he asked for his lawyer while Desoto police investigator Nick Bristow ("Officer Bristow") was taking him up to the interrogation room, and that at one point while in the interrogation room he had attempted to use the telephone to make a call to his lawyer. Officer Bristow testified that Hawkins had not asked for his lawyer while being led to the interrogation room and that, even though Hawkins was told not to use the telephone in that room, Hawkins had not stated that he wanted to use the telephone to call a lawyer.

B

The court does not find credible Hawkins' testimony regarding pre-interrogation requests for an attorney, particularly in light of Hawkins' demeanor and the officers' conduct during the videotaped interviews. Hawkins did not once mention during the questioning that he had made prior attempts to contact an attorney. As discussed above, the officers read Hawkins his *Miranda* rights, and they provided Hawkins an opportunity to ask clarifying questions before being interrogated. At this moment, given the relaxed nature of the interviews, and the liberty that he was given to speak, Hawkins had ample opportunity to bring up his previous attempts to reach an attorney, or at least to unequivocally assert his right to counsel. His account of having repeatedly sought to obtain counsel is inconsistent with his reacting to the reading of his *Miranda* rights simply by asking a clarifying question and then almost immediately waiving his right to counsel.

Moreover, even assuming that Hawkins had requested to speak to an attorney before the interrogation, and that this request had been refused, this does not invalidate his post-*Miranda*-warning confession. Hawkins does not contend that he was interrogated at any time before the videotaped interviews took place. Nor are there any statements made prior to his receipt of the *Miranda* warnings that he seeks to suppress. The evidence shows that the first instance of police questioning occurred in close temporal

proximity to the reading of the *Miranda* rights, Hawkins' unequivocal affirmation of his understanding of those rights, his almost immediate waiver of the right to counsel, and his own initiation of discussions with Lt. Pothen and Agent Tarango. There is no persuasive evidence that Hawkins submitted to the questioning without an attorney only because he had been repeatedly refused access to one.

Hawkins' testimony that he had been refused another opportunity to reach his attorney by not being allowed to use the telephone while in the interrogation room is undermined by the videotape evidence. The video shows that, during the first interview, during a period when no officers were present in the interrogation room, Hawkins attempted to make a call using the telephone in the room. An officer entered the room as this was occurring, and he informed Hawkins that he could not use the telephone. Hawkins' response is not entirely audible on the videotape, but it is clear that he did not indicate that he was attempting to reach an attorney. The invocation of the right to counsel requires "an unambiguous statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney." *Soffar,* 300 F.3d at 595. Hawkins' attempt to use the telephone does not meet this standard. The videotape evidence instead more clearly supports Officer Bristow's version of the events, and undermines the credibility of Hawkins' account

regarding his attempts to request the presence of a lawyer.

Hawkins' explanation for not continuing to ask for an attorney also lacks credibility. Hawkins testified that he did not continue requesting an attorney during the interview because he was nervous and felt threatened that, if he did so, the police were going to arrest his mother. The officers credibly denied making such threats. The videotape evidence shows that Hawkins was relaxed and spoke willingly throughout the interviews. Hawkins' demeanor did not evidence any signs of coercion or nervousness. Moreover, the fact that Hawkins inquired about his rights——"Could I get my lawyer to come now?" and "What's the advantage for me though?"——indicates that his decision was voluntary, knowing, and intelligent, and not the product of threats.

VI

In sum, viewing the totality of the circumstances surrounding the interrogation, the court finds that Hawkins did not unambiguously invoke his right to counsel. Even if his question to Agent Tarango should be viewed as an unambiguous statement that can reasonably be construed to be an expression of a desire for the assistance of an attorney, the court finds that Hawkins later validly waived this request for the assistance of counsel before he gave the confession that he seeks to suppress. The court therefore holds that the government proved by a preponderance of the evidence that the confession was not obtained in violation of *Miranda*,

*Edwards*, or the Fifth Amendment right to counsel, and it denies Hawkins' motion to suppress.

**SO ORDERED.**

May 14, 2008.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE